UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD BEAUREGARD and ) <br> LAURA BEAUREGARD, ) <br>    Plaintiffs ) <br> ) <br> V. ) <br> ) <br> EVEREST PARTNERS, ) <br>    Defendant ) | Civil Action <br> No: 05-10472 RGS |

SCHEDULING CONFERENCE MEMORANDUM
PURSUANT TO FRCP 16(b)

## FACTS

On March 28, 2003, the plaintiff, Richard P. Beauregard, was in the course of his employment as a maintenance man at the property managed by the defendant, Everest Partners, located at 99 Rosewood Drive, Danvers, MA, when he fell down the stairs at that building, injuring his left knee.

At the date and time of the aforementioned industrial accident, the defendant failed to maintain the mandatory worker's compensation coverage on its employees within the Commonwealth of Massachusetts as required by M.G.L. c. 152, §25C, 66 and 67. Since the date of his accident, Mr. Beauregard has been receiving worker's compensation benefits from the Worker's Compensation Trust Fund for the Commonwealth of Massachusetts. Despite that fact, due to their failure to maintain the required workers compensation insurance coverage, the defendant is subject to civil suit by Mr. & Mrs. Beauregard, for the recovery of their full tort damages, and the defendant has no defenses to that action.

Following the aforementioned incident, Mr. Beauregard was initially seen and treated at

HOWARD H. SWARTZ
ATTORNEY AT LAW
3 SUMMER STREET
CHELMSFORD, MASS. 01824

TEL. (978) 256-9655
(978) 441-9229

the Emergency Department of the Saints Memorial Medical Center, in Lowell, Massachusetts. When his condition failed to improve, he came under the care and treatment of Dr. Bruce Cummings, an Orthopedic Surgeon, formerly of Chelmsford, MA, who diagnosed him with a left knee sprain, possible PCL and MCL injury and possible medial meniscal tear, for which he treated Mr. Beauregard conservatively with rest, mediation, crutches, and a knee brace. Dr. Cummings disabled Mr. Beauregard at that time from work and referred him for an MRI of his knee to determine the extent of the damage therein. Thereafter, Mr. Beauregard obtained a second opinion from Dr. Eric D. Holstein, an Orthopedic Surgeon, in Lowell, MA, at which time Mr. Beauregard decided to transfer his treatment from Dr. Cummings to Dr. Holstein. Dr. Holstein diagnosed Mr. Beauregard as having sustained an internal derangement of the left knee.

On July 31, 2003, Dr. Holstein performed arthoscopic surgery on Mr. Beauregard's knee at Saints Memorial Medical Center, in Lowell, MA, at which time he did an anterior cruciate ligament reconstruction with middle third patella tendon. He also corrected tears of both the medial and lateral menisci. When Mr. Beauregard's condition failed to improve after a prolonged period of rest and therapy, Dr. Holstein performed an additional surgical procedure, once again at the Saints Memorial Medical Center, at which time he performed partial medial lateral menisectomies for small central tears of the posterior horn of the medial meniscus, a central 1/3 of the lateral meniscus. Mr. Beauregard's followup treatment consisted of bracing, which he continues to use to date, extensive physical therapy, the use of crutches, and, on May 24, 2004, Dr. Holstein gave him an intra-anticular corticosteroid injection into the knee.

Dr. Holstein, in his office note of April 26, 2004, and in his report of August 23, 2004, states that, despite the surgeries, and subsequent treatment, Mr. Beauregard continues to have medial, lateral, and anterior pain in the knee, as well as signs of reflex sympathetic dystrophy and

HOWARD H. SWARTZ
ATTORNEY AT LAW
3 SUMMER STREET
CHELMSFORD, MASS. 01824

TEL. (978) 256-9655
(978) 441-9229

dysfunction. He can ambulate independently, albeit with McConnell taping, and now the use of a CTI brace for stablization. He continues to take anti-inflammatory medications, and to do physical therapy on a home program. Dr. Holstein is of the professional opinion that, as a direct and proximate result of his left knee injury, Mr. Beauregard can never return to his former employment as a maintenance man, but could, at that time, return to work on a part-time, light duty basis, four (4) hours a day, with no heavy lifting or carrying over 30 pounds, no working at heights or on ladders, and that he must avoid persistent kneeling and squatting. Unfortunately, those are the very requirements of not only Mr. Beauregard's job as a maintenance man with the defendant but of all of his past relevant work experience. Dr. Holstein goes on to state that those restrictions placed on Mr. Beauregard by him are permanent in permanent in nature.

Since Dr. Holstein rendered those opinions in August, 2004, Mr. Beauregard has undergone further treatment. On or about December 5, 2004, while getting out of the shower at home, Mr. Beauregard's knee buckled, causing him to fall, and in so doing, he fractured his tail bone, and lacerated his right upper arm. After being seen at the Emergency Department of the Lowell General Hospital, Mr. Beauregard returned to Dr. Holstein who, in turn, referred him to his associate, Dr. Scott Sigman. After re-evaluating the knee, Dr. Sigman determined that Mr. Beauregard needs further surgery thereto. On February 7, 2005, Mr. Beauregard underwent another arthroscopic procedure to his knee for patella femoral syndrome, ACL graft scarring and lateral release.

At the date and time of his accident, Mr. Beauregard was 36 years old, with only a 9th grade education, and all of his past relevant work experience has been heavy, laborious, and unskilled in nature, to wit: either as a maintenance mechanic, or an auto detailer. Therefore, it is most likely that, with the aforementioned permanent restrictions, Mr. Beauregard will experience

HOWARD H. SWARTZ
ATTORNEY AT LAW
3 SUMMER STREET
CHELMSFORD, MASS. 01824

TEL. (978) 256-9655
(978) 441-9229

a sginificant impact upon his future earning capacity. At the date and time of his accident, Mr. Beauregard had a $538.46 average weekly wage, which, due to his young age, is alleged would only have tended to increase over his approximately 25 year work expectancy. In addition, he will continue to have pain, stiffness and suffering over the course of his remaining approximately 41 year life expectancy.

### INJURIES

Internal derangement of the left knee

### TREATMENT

3 surgical procedures, bracing, physical therapy, crutches, and, intra-articular corticosteroid injection in the left knee.

### DISABILITY

March 28, 2003 to date and continuing

### FUNCTIONAL LOSS

15% of the left lower extremity

7% of the whole person

### LOST WAGES

Approximately $60,845.98 and continuing

### MEDICAL BILLS

Approximately $73,070.29, to date

### LIENS

1. Commonwealth of Massachusetts Workers Compensation Trust Fund as of 5/19/05 $41,397.99

2. MassHealth as of 5/26/05 $25,951.06

HOWARD H. SWARTZ
ATTORNEY AT LAW
3 SUMMER STREET
CHELMSFORD, MASS. 01824

TEL. (978) 256-9655
(978) 441-9229

   3. Child Support as of 2/16/05 $22,425.58

Dated: 5/23/05

_____
Howard H. Swartz, Esquire
3 Summer Street
Chelmsford, MA 01824
978-256-9655

HOWARD H. SWARTZ
ATTORNEY AT LAW
3 SUMMER STREET
CHELMSFORD, MASS. 01824

TEL. (978) 256-9655
(978) 441-9229